IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEY RECYCLING, LLC,<br>          Plaintiff,<br><br>v.<br><br>APPLIANCE AND RECYCLING<br>CENTERS OF AMERICA,<br>          Defendant. | CIVIL ACTION<br><br><br><br>NO. 18-1656 |

## MEMORANDUM OPINION

Both Plaintiff and Defendant are corporations in the business of recycling household appliances. The two compete, along with others, for contracts from public utilities to dispose of appliances in a manner that comports with certain federal environmental regulations. Plaintiff alleges Defendant violated the Lanham Act, 15 U.S.C. § 1125(a), and Pennsylvania's unfair competition law by submitting bids for contracts that promised to comply with the federal regulatory scheme, even though Defendant planned to, and eventually did, dispose of the appliances in a manner inconsistent with that scheme. Plaintiff further alleges that the deceptive bidding practices resulted in Defendant winning contracts at Plaintiff's expense, which ultimately harmed Plaintiff's business. Defendant has filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6). For the reasons below, Defendant's motion is granted in part and denied in part.

    **I.**        **FACTS**

Plaintiff is Key Recycling, LLC ("Key" or "Plaintiff"), a Pennsylvania-based corporation involved in the appliance recycling business. Defendant, Appliance Recycling Centers of America, Inc. ("ARCA" or "Defendant"), is a company also in the recycling business. Plaintiff and Defendant compete for contracts from public utilities to collect, recycle, and dispose old

appliances in accordance with the U.S. Environmental Protection Agency's (EPA) Responsible Appliance Disposal (RAD) program. It is Defendant's alleged non-compliance with the strictures of the RAD program that give rise to this litigation.

The Complaint alleges that Plaintiff and Defendant participated in competitive bidding to acquire recycling contracts from public utilities, including among others PECO Energy Company (PECO) and First Energy, which required recyclers to comply with RAD requirements. ARCA submitted bids on its own behalf, whereas Key either submitted bids on its own behalf or else was included as a subcontractor on bids by another recycler, Recleim LLC.[1] Plaintiff alleges that Defendant submitted bids promising to execute the contracts in compliance with RAD regulations, even though, Defendant "was not RAD compliant and never intended to be RAD compliant when its bids were submitted." As a result of Defendant's allegedly deceptive bids, ARCA was able to underbid Key and win the contracts. Plaintiff alleges that Defendant's deception cost Key "multiple contracts and bids."

The Complaint details, at some length, how Defendant's execution of the contracts supposedly failed to comply with RAD regulations, with particular attention paid to ARCA's contract with PECO. The gist of the allegations is that Defendant cut costs by forgoing the time- and labor-intensive procedures required by EPA regulations, and, instead, dumped the non-processed appliances at scrapyards.

## II. PROCEDURAL HISTORY

Plaintiff initiated this suit in April of 2018. In response to Defendant's first Motion to Dismiss, Plaintiff moved to withdraw the Complaint and file an Amended Complaint, which this Court granted. Plaintiff filed its First Amended Complaint, to which Defendant filed its second

---

[1] The Complaint is not entirely clear as to which bids Key submitted on its own behalf. At least as to the contract with PECO, which is the main concern of the Complaint and the parties' briefing, Key was included as a subcontractor on a bid by Recleim.

Motion to Dismiss.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## IV. DISCUSSION

Defendant advances two arguments as to why Plaintiff's claims should be dismissed. First, Defendant contends that Plaintiff lacks a "right to sue" under the Lanham Act.[2] Second, Defendant argues that, even if Plaintiff has a cause of action, the Complaint lacks sufficient facts to make out a prima facie claim for false advertisement and false designation of origin under the statute.

---

[2] Although the Motion to Dismiss asserts "Key Lacks Standing to Assert the Claims," Defendant's argument is that Plaintiff lacks a "right to sue" under the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (clarifying that the inquiry with regard to a "right to sue" is "whether [plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)").

### A. Right to Sue

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Despite the statute's expansive language, the Supreme Court explained in *Lexmark* that potential plaintiffs must make a more particularized showing to establish a statutory cause of action under Section 1125(a). *Id.* To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must sufficiently allege that: (1) its injury comes within "the zone of interest" implicated by the statute; and, (2) that the Defendant's violation of the statute proximately caused the injury. *Id.* at 129-34.

Defendant argues that the Complaint contains insufficient facts to plausibly allege it proximately caused Plaintiff's harm. The proximate cause inquiry requires Plaintiff to plead that his injuries are not "too remote" from the Defendant's alleged violation of the Lanham Act. *Lexmark*, 572 U.S. at 133; *see also id.* ("[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising."). In "the classic Lanham Act false-advertising claim," where "one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus induc[es] customers to switch," the harm done is "attributable to," and thus proximately caused by, the defendant's conduct. *Id.* at 138, 140. On the other hand, "where the causal chain . . . is not direct, but includes the intervening link of injury" to another commercial actor, the indirect victim must show that the injury "follow[s] more or less automatically" from the harm suffered by the third-party. *Id.* at 140. For example, in *Lexmark*, the indirect-competitor plaintiff satisfied the proximate cause prong by alleging specific facts to establish that "any false advertising that reduced [defendant's direct competitor's] business necessarily injured

4

[plaintiff] as well." *Id.* at 139.  The alleged statutory violation thus resulted in "something very close to a 1:1 relationship between" the commercial harm suffered by the direct competitor and the commercial harm suffered by the plaintiff.  *Id.*

Defendant argues (1) Plaintiff is only an indirect victim of ARCA's alleged false advertising and, (2) as an indirect victim, Plaintiff fails to plead the "relatively unique circumstances," *id.* at 140, required to satisfy the proximate cause prong.  Defendant is wrong on both counts.

First, the Complaint sufficiently alleges that Plaintiff and Defendant are direct competitors, and that Plaintiff suffered commercial harm as a result of ARCA's statutory violation.  Plaintiff alleges that Key and ARCA are "subcontractors seeking to procure the same business contracts," and that "[a] number of RAD Partners, including without limitation, PECO and First Energy, received bids from both ARCA and Key in response to [Request For Quotes] issued by those RAD Partners."  But, because "ARCA . . . was not RAD compliant and never intended to be RAD compliant when its bids were submitted," "ARCA purposely underbid contracts previously held by Key" or "up for renewal with Key."  The "lower quotes resulted in ARCA winning bids and contracts, including the renewal contracts" at the expense of Key.  Taken together, the allegations make out a "classic Lanham Act false-advertising claim" that satisfies the proximate cause prong.

Second, to the degree that Plaintiff is an indirect competitor of Defendant, the Complaint contains sufficient facts to plausibly allege that, as such, it was proximately harmed by Defendant's acts.  Plaintiff alleges that Recleim, which is Defendant's direct competitor, identified Key "as a supporting participant with Recleim to secure a successful bid for PECO's ARP Program," and that ARCA won the PECO bid at Recleim's expense through its deceptive

5

practice in the bidding process. As a named subcontractor, the "false advertising that reduced [Recleim's] business necessarily injured [Key] as well," such that there is "something very close to a 1:1 relationship between" the commercial harm suffered by Recleim, the direct competitor, and the commercial harm suffered by Key, the indirect competitor. *Lexmark*, 572 U.S. at 140. At least as to the PECO contract, the harm to Plaintiff "would follow more or less automatically" from the harm to Recleim, without the need "for any 'speculative . . . proceedings' or 'intricate, uncertain inquiries.'" *Id.*[3]

Plaintiff has therefore alleged sufficient facts to establish a right to sue under the Lanham Act as both a direct and indirect competitor to ARCA.

**B. Prima Facie Case**

Defendant's second argument is that Plaintiff's Complaint does not contain sufficient factual allegations to make out a claim for false advertising or for false designation of origin.

*1. False Advertisement*

To make out a false advertising claim under the Lanham Act, a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised

---

[3] Defendant argues that deeming Plaintiff's proximate cause theory to be plausible would "dramatically expand the scope of the Lanham Act almost to the point of boundlessness" because "[i]t would stand to reasons that ARCA also could not prepare its bid for the PECO contract (or any other contract) without its IT vendor, its payroll company, its insurance broker, or any other necessary service provider."

The proximate cause inquiry, however, differs between a subcontractor and a mere service provider. It is not only foreseeable, but inevitable, that a named subcontractor will suffer commercial harm when a general contractor losses a bid to a competitor because of a Lanham Act violation. No speculation is required to determine whether the subcontractor's commercial harm is attributable to, and thus proximately caused by, the competitor's malfeasance because the bid itself lays out the relationship between the sub- and general contractor. *Lexmark*, 527 U.S. at 140.

On the other hand, when a general contractor losses a bid to a competitor "its IT vendor, its payroll company, its insurance broker, or any other necessary service provider" do not necessarily stand to suffer commercial harm as well. They might, but the harm is "not surely attributable to . . . the defendant's conduct, but might instead have resulted from any number of other reasons." *Id.* That a subcontractor will inevitably suffer harm, whereas a service provider may or may not suffer such harm, differentiates the two for the proximate cause inquiry.

goods traveled in interstate commerce; and 5) that there is a likelihood of injury to
the plaintiff in terms of declining sales, loss of good will, etc.

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). Here, Defendant argues Plaintiff has failed to meet the first element because the Complaint "fails to allege facts that any particular 'statement' by ARCA was false when made." To the contrary, the Complaint specifically alleges that Defendant "participated in competitive bidding to acquire the PECO and First Energy contracts by averring [it was] RAD compliant," but that Defendant "was not RAD compliant and never intended to be RAD compliant *when its bids were submitted*." The Complaint, therefore, alleges that the statements were "false or misleading at the time they [were] made." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp.2d. 384, 464 (D.N.J. 2009) (quoting *Alpo Petfoods, Inc. v. Ralston Purina Co.,* 720 F. Supp. 194, 205 n.12 (D.D.C.1989)).

Relatedly, Defendant argues Plaintiff's allegation that ARCA did not intended to be RAD compliant in 2016 is implausible. Specifically, Defendant points out that "all of the factual allegations used to support this conclusory averment concern events in late 2017 or even early 2018, or are intentionally vague as to when they supposedly occurred." From this, Defendant argues that Plaintiff "conflat[es] the concept of a false statement and a broken promise."[4] Allegations of subsequent RAD noncompliance, however, are sufficient to render plausible the allegation that Defendant never intended to be RAD compliant when its bids were submitted. At the motion to dismiss stage a reviewing court must construe allegations "in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). It is at least plausible to infer from the alleged noncompliance in 2017 and 2018 that Defendant was not RAD compliant and did not intend to

---

[4] Put a bit differently, Defendant argues that Plaintiff conflates a breach of contract claim with a Lanham Act false advertising claim.

be RAD compliant when bids were submitted in 2016. Of course, Plaintiff must go on to establish that the statements were false when made, but the Complaint contains sufficient facts to make out a viable false advertising claim. Defendant's Motion to Dismiss Count I of the Complaint will therefore be denied.

### 2. *False Designation of Origin*

For a claim of false designation of origin, Plaintiff must allege:

> (1) that the defendant uses a false designation of origin; (2) that such use of a false designation of origin occurs in interstate commerce in connection with goods or services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the plaintiff's goods and services by another person; and (4) that the plaintiff has been or is likely to be damaged.

*Parker v. Google, Inc.,* 242 F. App'x. 833, 838 (3d Cir. 2007) (quoting *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994)). As a leading case explains, false designation of origin entails "palming off" or "passing off" where a party sells "a good or service of one's own creation under the name or mark of another." *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981). The Complaint contains no allegations that Defendant attempted to pass off its services under Plaintiff's name or mark.[5] Defendant's Motion to Dismiss Count II of the Complaint will be granted.

---

[5] Plaintiff concedes as much in its briefing: "Plaintiff agrees to the dismissal of Count II with respect to the false designation of origin component of its claim." Still, Plaintiff asks the claim be dismissed "without prejudice to being reinstated after discovery."

"A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002); *see also Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) ("[T]hree attempts at a proper pleading is enough."). Here, Plaintiff was on notice as to the deficiencies of the false designation of origin claim because Defendant's first Motion to Dismiss raised the same arguments presented in the second Motion to Dismiss. *See* ECF No. 6. Nevertheless, Plaintiff failed to include any factual allegations to support the false designation of origin claim in the Amended Complaint. In this situation dismissal with prejudice is appropriate. *See U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

### C. Pennsylvania Unfair Competition Law

As the parties acknowledge, the Pennsylvania common law cause of action for unfair competition is "virtually the same" as the Lanham Act. *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006); *see also Harp v. Rahme*, 984 F. Supp.2d 398, 410 (E.D. Pa. 2013), *aff'd without opinion,* (3d Cir., Aug. 13, 2014) ("The requirements of a Pennsylvania unfair competition claim mirror those of a Lanham Act claim, but without the additional federal requirement of interstate commerce."). The Complaint makes out a viable Lanham Act claim on a theory of false advertisement, but fails to make out a viable claim on a theory of false designation of origin. Accordingly, Defendant's Motion to Dismiss Plaintiff's unfair competition claim will denied as to the theory of false advertisement and granted as to the theory of false designation of origin.

**BY THE COURT:**

**September 24, 2018**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**